# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x
ANDREW DELANEY,

                  *Plaintiff*,                       Index No.

            -against-                       <u>COMPLAINT</u>

HC2, INC.,                                     <u>JURY TRIAL DEMANDED</u>
STEPHANOS ZANNIKOS,
MICHAEL JOHN ESKER NACCHIO,
and
TOYOTA MOTOR NORTH AMERICA, INC.,

                  *Defendants*.
------------------------------------------------------------------x

       Complaining of the defendants plaintiff Andrew Delaney alleges as follows:

<u>PRELIMINARY STATEMENT</u>

       This is an action brought pursuant to Judiciary Law § 487 and other laws against the defendants based upon the deceit and/or consent to deceit of the defendants with the intent of the defendants to deceive the courts resulting in the plaintiff incurring monetary damages.

<u>PARTIES</u>

       1.      The plaintiff resides in the Republic of the Philippines and has his address at Sen. Gil Puyat Avenue, Makati Central No. 1057, Brgy. San Antonio, Makati City 1250, the Philippines.  The plaintiff is Toyota Motor North America, Inc.'s ("Toyota") and HC2, Inc.'s ("HC2") former employee.

       2.      The defendant HC2 is a District of Columbia corporation with its principal place of business at 360 Lexington Avenue Ste. 1100, New York, New York 10017.  HC2 is Toyota's agent.

1

Case 1:24-cv-05211-LJL    Document 1-2    Filed 07/10/24    Page 3 of 27

3.      Upon information and belief, the defendant Stephanos Zannikos ("Zannikos") is an attorney duly licensed to practice law in the State of New York, and maintains an office for the practice of law at 360 Lexington Avenue Ste. 1100, New York, New York 10017.  Zannikos is HC2's general counsel.

4.      Upon information and belief, the defendant Michael John Esker Nacchio, Esq. ("Nacchio") is an attorney duly licensed to practice law in the State of New York, and maintains an office for the practice of law at Mondelez International, Inc., 100 Deforest Avenue, East Hanover, New Jersey 07936-2813.  Nacchio was HC2's outside counsel.

5.      The defendant Toyota is a California corporation with its principal place of business at 6565 Headquarters Drive, Plano, Texas 75024.  Toyota is registered with the New York Secretary of State.  Its registered agent is CT Corporation System, 28 Liberty Street, New York, New York 10005.

6.      Douglas A. Goldstein, Esq. ("Goldstein"), Spector & Ehrenworth, P.C., Kasowitz Benson Torres LLP ("Kasowitz"), Ronald R. Rossi, Esq., Gregory M. Messer, Esq. ("Messer"), Gary F. Herbst, Esq. ("Herbst"), and Lamonica Herbst & Maniscalco LLP ("Lamonica") are unnamed co-conspirators in this action.

<u>JURISDICTION AND VENUE</u>

7.      This Court has jurisdiction over the defendants pursuant to N.Y. C.P.L.R. § 301 and § 302.

8.      N.Y. C.P.L.R. § 302(a)(2) further authorizes the exercise of personal jurisdiction over Toyota which committed tortious acts within New York either in person or by an agent.

9.      Venue is proper in New York County pursuant to N.Y. C.P.L.R. § 503 because HC2 and Zannikos maintain offices at 360 Lexington Avenue Ste. 1100, New York, New York

10017, in New York County, and Toyota does business in New York County, and because a

portion of the events giving rise to this action occurred in New York County.

<u>FACTS</u>

10.     On December 23, 2020, the plaintiff filed for chapter 7 in the United States

Bankruptcy Court for the Eastern District of New York.  *In Re Andrew John Delaney*, Case No.

20-44372 (Bankr. E.D.N.Y. 2020).

11.     The plaintiff has standing to bring this lawsuit in his own capacity because it is

post-petition and he is only claiming damages for the defendants' acts which accrued after

January 1, 2021.[1]

12.     After the plaintiff filed for bankruptcy, the defendants 1) committed tortious acts

against the plaintiff, 2) lied to the chapter 7 trustee Messer and his lawyers Lamonica and Herbst

about the plaintiff, 3) falsely and continuously accused the plaintiff of "extortion" (a crime in

New York State, where there is no civil extortion) after a federal district court had already ruled

"it is not an extortion" (*see* footnote 1 below), 4) filed a fraudulent proof of claim for

$1,180,152.67 (Exhibit A), 5) breached the stipulation and agreement between HC2 and the

plaintiff and the August 1, 2021 bankruptcy court order by continuing to appear in the case and

---

[1] On April 20, 2020, the defendants filed a fraudulent lawsuit against Delaney in the United States District Court for the Southern District of New York (the "Southern District") seeking a temporary restraining order ("TRO") and preliminary injunction ("PI") based on two baseless claims for breach of contract and faithless service doctrine. *HC2, Inc. v. Delaney*, 20-cv-3178 (S.D.N.Y. April 20, 2020) (Liman, J.).  The defendants brought the case based on *jurisdictional fraud*.  There was no claim for "extortion", which is a crime in New York where there is no civil extortion.
On April 20, 2020, Judge Liman *denied* HC2's TRO application.  On May 27, 2020, Judge Liman *further denied* HC2's PI motion ruling that it had no chance of success on the merits and "It [Delaney's lawyer's letter to Toyota] is a routine demand letter and it's not extortion."
*See* Frank G. Runyeon, "WilmerHale, Toyota Agency Posted Sealed Info, Loses Gag Bid," Law360, May 27, 2020. https://www.law360.com/articles/1277147/print?section=commercialcontracts
But that did not stop the defendants *from lying about the contents of the Toyota letter* and *ignoring Judge Liman and from continuing* to lie about Delaney and to accuse him in his bankruptcy case of "extortion" in the relevant period 2021-2024.

3

oppose the plaintiff after HC2 had been ordered withdrawn from the case with prejudice, 6)

violated N.Y. Jud. Law § 487 through their deceit and collusion, and 7) violated the new N.Y.

Labor Law § 740 which amendments took effect on January 26, 2022.

13.     On January 5, 2021, the plaintiff publicly accused the defendants of jurisdictional

fraud in an article which appeared in Law360 "Ex-WilmerHale Temp Says Agency 'Cooked'

Case Jurisdiction."[2]

14.     On February 18, 2021, the plaintiff accused the defendants of procuring perjury

and instructing witnesses to lie under oath for Toyota.[3]

15.     On March 12, 2021, the plaintiff filed a motion to voluntarily dismiss his chapter

7 case.  The trustee initially verbally agreed with the plaintiff to the dismissal – until the

defendants got to him with their lies, corruption, and deceit.

16.     The defendants did not want for the plaintiff to dismiss the chapter 7 case *at all

costs*.  Right after the plaintiff filed the motion to dismiss, the defendants began aggressively

contacting the trustee and his lawyers, lying to them and to the bankruptcy court about the

plaintiff, and attempting to destroy the plaintiff personally and professionally.  The defendants

lied to Messer and his lawyers about the plaintiff's assets to make them think there was a "pot of

gold", including that he "owned four pieces of real estate" and had "four undisclosed financial

accounts".

17.     On March 16, 2021, four days after the plaintiff's motion to dismiss was filed, the

defendants employed an unethical lawyer, Goldstein, to file a notice of appearance and to make

---

[2] Frank G. Runyeon, "Ex-WilmerHale Temp Says Agency 'Cooked' Case Jurisdiction," Law360, Jan. 5, 2021. https://www.law360.com/articles/1341932/ex-wilmerhale-temp-says-agency-cooked-case-jurisdiction

[3] Frank G. Runyeon, "Ex-WilmerHale Temp Says White House Atty Lied For Toyota," Law360, Feb. 18, 2021. https://www.law360.com/articles/1349517/ex-wilmerhale-temp-says-white-house-atty-lied-for-toyota

4

false and utterly fraudulent filings in the plaintiff's bankruptcy case. As shown by HC2's redacted billing records, Goldstein's dishonest acts were all coordinated by the defendants.

18.     From March 16-18, 2021, and at other times through the present, the defendants sent false information to the trustee and his lawyers about the plaintiff and even drafted and reviewed the trustee's and his lawyers' documents in the plaintiff's bankruptcy case. This was illegal, since the trustee is supposed to be independent and also owes a duty to the debtor.[4]

19.     On March 18, 2021, in a 424B5 filing, Toyota disclosed that the company had reported anti-bribery violations related to a Thai subsidiary to the United States Securities and Exchange Commission and the United States Department of Justice (the "DOJ").[5]

20.     On March 25, 2021, in a state court case, Nacchio wrote in a sworn affirmation: "Finally, the lawyer who was assisting the plaintiff in carrying out his scheme to extort a significant payment from the Corporate Client, is the same lawyer who signed and caused to be filed the State Court Complaint." *Delaney v. HC2 Inc. d/b/a/ Hire Counsel*, Case No. 651740/2021 (Sup Ct, New York County, 2021) (Tisch, J.) (Tisch Doc. No. 9) The defendants were *continuing to accuse the plaintiff of extortion even after Judge Liman had ruled otherwise* in an open hearing 10 months before on May 27, 2020. Tisch Document #9 at 3.

21.     On March 26, 2021, the defendants had Goldstein file fraudulent objections to the plaintiff's motion to dismiss the bankruptcy case. Mazer-Marino ECF No. 27. But worse, the defendants falsely informed Messer and his lawyers that the plaintiff owned four pieces of undisclosed real estate and also had a judgment against him (from Judge Liman) for extortion.

---

[4] "The Role of the Bankruptcy Trustee in Bankruptcy Legal Proceedings," Justicia ("The bankruptcy trustee is required to treat a debtor fairly and honestly but does not represent or advocate for them."). https://www.justia.com/bankruptcy/bankruptcy-procedures/the-role-of-the-bankruptcy-trustee/

[5] "Toyota says it reported Thai bribery probe to U.S. SEC and DoJ," Reuters, Mar. 19, 2021. https://uk.news.yahoo.com/finance/news/toyota-says-reported-thai-bribery-002800432.html

5

The now-public billing records show that Messer, Lamonica, and Herbst were given this false information by the defendants.  *See* Exhibit B hereto (Mazer-Marino ECF No. 61-5).  As a result of the defendants' lies about the plaintiff, on the same day, March 26, 2021, Messer wrote in opposition to the plaintiff's motion to dismiss the bankruptcy case: "The Trustee's investigation also found: (i) four (4) distinct real property ownership records associated with the Debtor…. *The Debtor also does not have only $44,434 in credit card debt as stated on his Motion to Dismiss, but also has a judgment against him for an additional $67,458.91*[6]."  (Mazer-Marino ECF No. 22 at 4) (emphasis added) HC2's billing records show that it was the defendants who communicated this false and defamatory information to Messer and his lawyers.

22.     On March 26, 2021, based on the defendants' lies and deceit, the trustee wrote: "*Upon information and belief, the Debtor is appealing a judgment entered against him for extorting his prior employer*." (Mazer-Marino ECF No. 22 at 3) (emphasis added) *That was exactly the opposite of Judge Liman's ruling*.   Chapter 7 was enacted by Congress to *help debtors* such as the plaintiff.  But the defendants and their crooked lawyers were abusing it to cause damages to the plaintiff through their lies and deceit.

23.     On March 26, 2021, Zannikos filed the "Certification Of Stephanos Zannikos In Support Of HC2, Inc. d/b/a Hire Counsel's Motion For Extension Of Time For HC2, Inc., d/b/a Hire Counsel To Object To Discharge Pursuant To Fed. R. Bankr. P. 4004(B) And To Challenge Whether Certain Debts Are Dischargeable Pursuant To Fed. R. Bankr. P. 4007(C)" in which he again[7] *repeatedly perjured himself*:

Stephanos Zannikos, of full age, certifies as follows:…

---

[6] This was an effective admission that HC2's $1,180,152.67 proof of claim was false.

[7] In addition to the Southern District jurisdictional fraud, which was in a false verified complaint attested to by Zannikos under penalty of perjury.

6

5. On March 17, 2020, the Law Firm Customer [Wilmer Hale] decided to suspend the Project in view of the COVID-19 pandemic while it considered the possibility of moving to a remote review. The Law Firm Customer [Wilmer Hale] and its Corporate Client [Toyota] decided not to conduct the remainder of the review.

6. *HC2 never terminated the Employment Agreement or took any other action to terminate Delaney's employment by HC2.*[8] Nonetheless, Delaney sent multiple emails on March 17 and 18, 2020 to the Law Firm Customer [Wilmer Hale] and the Corporate Client [Toyota] falsely claiming that he had been wrongfully terminated for expressing concerns about COVID-19.

7. *Delaney engaged counsel to demand $450,000 from the Corporate Client [Toyota], but his attorney ceased representing him a few days after making this demand and Delaney immediately engaged new counsel. On April 13, 2020, Delaney's new counsel emailed a letter to the Corporate Client's [Toyota] Chief Executive Officer [Akio Toyoda] and Board of Directors, reiterating his demand for a payment and threatening litigation and disclosure of the Corporate Client's [Toyota] privileged and confidential information if his demand was not met by April 14, 2020.*

8. The Corporate Client [Toyota] did not capitulate to Delaney's demands or threats. On April 15, 2020, a day after Delaney's deadline passed, Delaney's lawyer signed and filed a state court complaint, which alleges and acknowledges that the John Doe plaintiff, identified therein as Delaney, gained the confidential and privileged knowledge and information disclosed therein during the course of a document review project for the Corporate Client [Toyota]….

22. I hereby declare under penalties of perjury that I have read the foregoing Certification, and that the allegations contained therein are true and correct to the best of my knowledge.

Mazer-Marino ECF No. 27-1 (emphasis added). The plaintiff's *actual* letter to Toyota is attached hereto as Exhibit C. Judge Liman had already ruled: "It is a routine demand letter and it's not an extortion." However, the defendants continued to lie about the contents of the demand letter (including falsely adding a demand for money of $450,000, which specific demand for money is a requirement for extortion) to make the plaintiff appear like a criminal while themselves ignoring the ruling of a federal judge and, worse, then telling the trustee and his

---

[8] *See* Zannikos' e-mail dated March 30, 2020 where he clearly admits a year earlier to having "terminated" Delaney. Exhibit D hereto.

7

lawyers that Judge Liman had issued a judgment against the plaintiff for extortion.  This is clear

and unequivocal deceit and fraud on the court.

24.     On April 6, 2021, HC2 filed an utterly fraudulent proof of claim for

$1,180,152.67 so that they could interfere in the plaintiff's bankruptcy case and harass him.  *See*

Exhibit A hereto.  Goldstein explained to the bankruptcy court that this was for supposed

attorneys fees and costs from the Southern District case.  HC2 submitted bills in support of the

claim, which was mostly $1 million for HC2's former counsel Kasowitz, which had *lost* the TRO

and PI.  *See* Exhibit B hereto (Mazer-Marino ECF No. 61-5).  ECF No. 61-5 clearly shows that

the whole basis for the $1,180,152.67 proof of claim was HC2's legal costs (mostly Kasowitz's)

for the TRO and PI both of which applications it *lost*.  Of course, Judge Liman did *not* ever order

the plaintiff to pay legal fees for HC2's failed applications.  There was no possible legal theory

under which the winner (the plaintiff) could have been ordered to pay the loser's (HC2's)

attorneys fees and costs per ECF No. 61-5 (Exhibit B hereto).  It was a total and complete lie to

the bankruptcy court.  *However, the defendants wanted to file this fraudulent claim in order to*

*inflate the plaintiff's low debt, only $44,000, by 97% to be over $1.2 million.*[9]  HC2 falsely

claimed to the bankruptcy court that it was the plaintiff's "creditor" when it knew that it was not.

Its filing of this false proof of claim was a criminal act and the defendants were part of a criminal

conspiracy in this regard.

25.     On April 8, 2021, the defendants had Goldstein appear at the hearing on the

plaintiff's motion to dismiss which was denied due to their dishonesty.  At the hearing, the

---

[9] On information and belief, Messer, Lamonica, and Herbst were working in concert with the defendants to present
this false proof of claim, *which is a crime*.  Messer, Lamonica, and Herbst went along with this fraud and falsely
claimed that it was the trustee who "settled" the HC2 proof of claim on September 1, 2021 after it had already been
withdrawn a month earlier which had nothing to do with him.

8

plaintiff said: "But now they've put in their proof of claim that I owe them $1.2 million. For what? For attorneys fees that they spent on a case they brought against that the judge tossed?" The trustee then stated based on the defendants' lies: "The Trustee has found property under Andrew Delaney in Westchester County." After lying about the plaintiff's four bank accounts, fake creditor HC2's Goldstein said: "MR. GOLDSTEIN: Yes. Thank you, Your Honor. And I would just add to the Trustee's presentation that an additional grounds for denial of the motion is lack of bad faith. It's not just the existence of these assets; it's the fact that the Debtor has failed to disclose them." Regarding the jurisdictional fraud in the Southern District, Goldstein said: "You know, lack of subject matter jurisdiction in that other lawsuit is really irrelevant for today." He tried to sweep the defendants' jurisdictional fraud under the rug.

26. On May 20, 2021, the defendants filed an ex parte motion to issue subpoenas duces tecum to four financial institutions where they falsely claimed the plaintiff had accounts. (Mazer-Marino ECF No. 51) In its motion, HC2 lied that: "The Debtor did not disclose in his bankruptcy schedules or Statement of Financial Affairs the existence of any assets, liabilities, closed accounts, depositories for securities or other relationships with any of the Financial Institutions." But the plaintiff did not have accounts with those "Financial Institutions" so that this was another lie.

27. On May 26, 2021, it was reported that Toyota was under grand jury investigation in Texas by the DOJ[10] for violating the Foreign Corrupt Practices Act of 1977, 15 U.S.C. ch. 2B § 78a et seq.[11]

---

[10] At the same time, Wilmer Hale hired the DOJ FCPA chief investigating Toyota, Christopher Cestaro, to be a partner in its firm which was representing Toyota. *See* David Thomas, "WilmerHale taps Justice Department's FCPA chief for white collar group," Reuters, May 1, 2021.
https://www.reuters.com/legal/government/wilmerhale-taps-justice-departments-fcpa-chief-white-collar-group-2021-05-28/

[11] Frank G. Runyeon, "DOJ Takes Toyota Thai Bribery Probe To Texas Grand Jury," Law360, May 26, 2021.

9

28.     On June 4, 2021, the defendants had HC2 file a fraudulent adversary case, which

it withdrew shortly thereafter with prejudice knowing that it was a blatant fraud on the court.

(Mazer-Marino ECF No. 54) In HC2's Complaint Objecting to Discharge of the Debtor (Mazer-

Marino ECF No. 1) in the adversary case (Adversary Case No. 1-21-01047), Goldstein lied

repeatedly about the plaintiff:

> 7. Delaney is an individual whose street address is currently 330-340 Baychester Ave.
> Bronx, New York 10475[12]….
>
> 12. HC2 never terminated the Employment Agreement or took any other action to
> terminate Delaney's employment by HC2.[13]  Nonetheless, Delaney sent multiple e-mails
> on March 17 and 18, 2020 to the Law Firm Customer [Wilmer Hale] and the Corporate
> Client [Toyota] falsely claiming that he had been wrongfully terminated for expressing
> concerns about COVID-19.
>
> 13. Delaney engaged counsel to demand $450,000 from the Corporate Client [Toyota],
> but his attorney ceased representing him a few days after making this demand and
> Delaney immediately engaged new counsel. On April 13, 2020, Delaney's new counsel
> e-mailed a letter to the Corporate Client's [Toyota] Chief Executive Officer [Akio
> Toyoda] and Board of Directors, reiterating his demand for a payment and threatening
> litigation and disclosure of the Corporate Client's [Toyota] privileged and confidential
> information if his demand was not met by April 14, 2020….
>
> 97. On March 18, 2021, the Clerk of this Court filed a Notice of Discovery of Assets and
> set a bar date of June 16, 2021 for creditors to file proofs of claims.  See Doc. 20.
>
> 98. On April 6, 2021, HC2 filed a proof of claim for $1,180,152.67 (the "HC2 Proof of
> Claim").  See Claim Register, Claim 2….
>
> 115. On the Petition Date, Delaney had one or more accounts for securities, cash or other
> valuables with one or more of the Financial Institutions that held securities, cash or other
> valuables.

---

https://www.law360.com/articles/1388032/doj-takes-toyota-thai-bribery-probe-to-texas-grand-jury

[12] According to www.vocabulary.com, "street address" is defined as "the address where a person or organization can
be found."  Delaney resides and is domiciled in the Philippines.  The address here is for a Staples Store in the Bronx
where Delaney never resided.

[13] This is another lie.  Zannikos admitted to terminating Delaney in his March 30, 2020 e-mail.  See Exhibit D
hereto.

116. Delaney was required to disclose in his bankruptcy schedules or his Statement of Financial Affairs, and at the Meeting of Creditors, the existence of one or more accounts for securities, cash or other valuables with one or more of the Financial Institutions.

117. Delaney did not disclose in his original or amended bankruptcy schedules or Statement of Financial Affairs, or at the Meeting of Creditors, the existence of any assets, liabilities, open or closed accounts, depositories for securities or other relationships with any of the Financial Institutions….

WHEREFORE, HC2 respectfully requests that this Court enter a judgment against Delaney: A. For denial of a discharge pursuant to Code Sections 727(a)(2) and/or (a)(4) and Bankruptcy Rule 4004….

All of the defendants' above-quoted statements above were lies and a fraud on the court. Worse, the defendants lied about the orders from a federal judge, Judge Liman, and continued to lie about the contents of the Toyota demand letter so as to be able to falsely accuse the plaintiff, a lawyer, of extortion. The attorney defendants unethically and deceitfully lied about authority to the courts. The defendants just *"made up" the contents of Judge Liman's order to be the opposite of what it was*, i.e. that he entered a judgment against the plaintiff for extortion, as well as the contents of the Toyota demand letter, falsely claiming that the plaintiff demanded "$450,000" and "threatening litigation and disclosure of the Corporate Client's [Toyota] privileged and confidential information." The problem is that no such contents are contained in what Judge Liman called "a routine demand letter". The defendants just lied over and over again in order to win.

29.    On June 16, 2021, after lying in order to get the court to issue the subpoenas in the first place, HC2 served subpoenas duces tecum on Bank of America, E-Trade, Charles Schwab, and Wells Fargo. Mazer-Marino ECF Nos. 57-60. But none of the defendants was the plaintiff's creditor. Moreover, the plaintiff did not have accounts at any of these banks, except for Wells Fargo, which was an *attorney IOLTA account* and not his "asset" as the defendants

falsely and fraudulently represented to the trustee and the bankruptcy court to discredit the

plaintiff and prevent him from dismissing his bankruptcy case.

30.     On June 16, 2021, in an affidavit in opposition to the plaintiff's motion to

expunge HC2's false $1,180,152.67 proof of claim (Docket No. 61-2), Zannikos again lied to the

court:

> 14. Subsequently, Delaney engaged counsel to demand $450,000 directly from the
> Corporate Client [Toyota]. (*See* Ex. E; *see also HC2 Inc. v. Andrew Delaney*, 20-cv-
> 03178-LJL, Dkt. No. 1, annexed to Amended Proof of Claim, Ex. 2 ("S.D.N.Y Compl.").
> The letter, though dated April 7, 2020, was emailed directly to the Corporate Client
> [Toyota] on April 13, 2020. In it, Delaney's lawyer threatened to commence legal action
> and publicly disclose such confidential and privileged information about the Corporate
> Client [Toyota] that Delaney had obtained during the Project if Delaney's demand was
> not met by the next day. (S.D.N.Y Compl. ¶ 6). The Corporate Client [Toyota] did not
> pay Delaney's $450,000 demand. (Id. ¶ 7). Instead, on April 14, 2020 the Law Firm
> Customer [Wilmer Hale] sent an email to Delaney's counsel warning him not to contact
> the Corporate Client [Toyota] again and objecting to Delaney's threat to disclose the
> Corporate Client's [Toyota] privileged and confidential information. (Id.).

> 24. The plaintiff's objection to HC2's proof of claim should be overruled.

Mazer-Marino ECF No. 61-2.  Zannikos once again lied about the contents of the Toyota

demand letter and ignored Judge Liman's May 27, 2020 ruling this time in support of HC2's

fraudulent proof of claim.

31.     On June 16, 2021, in support of their fraudulent proof of claim, the defendants

produced billing records which showed the defendants providing false information to the trustee

and drafting his filings in the bankruptcy case:

> 03/16/21 DAG ... e-mail message to G. Messer with introduction, discuss undisclosed
> information;

> 03/ 17 /21 ALL Continued preparation of the Opposition to Debtor's Motion to Dismiss
> … my t/c/w G. Messer; telephone conference with G. Messer re: introduction, pending
> lawsuits, status of bankruptcy case, next steps

03/18/2 DAG…. receive and review G. Messer's opposition to motion to dismiss, motion for extension of time to object to discharge; e-mail message to trustee's attorneys re: error in their affidavit of service.

Mazer-Marino ECF No.61.

32.     On June 24, 2021, in connection with the HC2's bogus adversary case, Delaney filed discovery requests to HC2 and deposition notices for Joan Davison ("Davison"), Zannikos, and Brian Hartstein ("Hartstein") including regarding the jurisdictional fraud in the Southern District.

33.     But the defendants' three witnesses refused to appear for depositions because they knew that they had lied to the courts.

34.     On July 12, 2021, a panicked Goldstein filed the *emergency* "Letter Requesting Conference Pursuant to E.D.N.Y. LBR 7007-1 Filed by Douglas A Goldstein on behalf of HC2, Inc." seeking an urgent hearing to quash the depositions of Davison, Zannikos, and Hartstein and/or to limit the question so that the plaintiff could not ask about the Southern District jurisdictional fraud.  Mazer-Marino ECF No. 72.

35.     On July 13, 2021, the plaintiff opposed the Goldstein letter.  Mazer-Marino ECF No.73.

36.     On July 15, 2021, Judge Mazer-Marino denied Goldstein's attempt to stop or limit the depositions and ordered the three HC2 witnesses to appear for the depositions noticed by the plaintiff.

37.     On July 19, 2021, four days later, HC2 suddenly filed a motion to withdraw its proof of claim.  *See* Exhibit E hereto (Mazer-Marino ECF Nos. 75-76).  In its motion, HC2 wrote: "1. By its Motion to Withdraw, HC2 seeks the withdrawal of its proof of claim, filed as Claim 2…. 9. After the June 24, 2021 hearing, the plaintiff propounded written discovery

13

requests on HC2 and requested the depositions of certain HC2 personnel.… 11. After the July 15, 2021 conference, HC2 determined that it no longer wishes to prosecute Claim 2 or the Cross-Motion, or defend against the Objection, or otherwise seek allowance of a pre-petition claim against Delaney or the bankruptcy estate.… 22.… *HC2 does not intend to use the withdrawal of Claim 2 for any improper or tactical purpose, such as, for example, the pursuit of Claim 2 in another forum, and HC2 does not seek to escape this Court's jurisdiction over it.  As a result, HC2's request for the withdrawal of Claim 2 does not involve any 'vexatiousness' on HC2's part.… fn. 2 In several filings made with this Court, Delaney has argued that HC2 is not a creditor.  If this Court grants the Motion to Withdraw, Delaney no longer will need to argue that HC2 is not a creditor.*"  Mazer-Marino ECF No. 76.

38.    In reliance on HC2's stipulations and representations to the bankruptcy court, the plaintiff entered a "Letter of Consent and No Objection to Motions Documents Nos. 76 and 77." Mazer-Marino ECF No. 78.  However, after they got what they wanted, it soon became clear that the defendants had lied to the court about their "intentions" when HC2 and Goldstein continued to appear and to oppose the plaintiff in the bankruptcy case.

39.    On August 1, 2021, Judge Mazer-Marino ordered "1. Claim 2 of HC2 is hereby withdrawn, with prejudice to HC2s right to file another proof of claim in this bankruptcy case. 2. Discovery concerning Claim 2 and concerning the objection filed by the Debtor against Claim 2 in this case is hereby terminated."  Mazer-Marino ECF No. 83.

40.    On August 2, 2021, the defendants withdrew the HC2 proof of claim and corrected the claims register for the plaintiff's case: "Description: (2-1) Per Order Dated 8/1/2021, Claim 2 of HC2 is hereby withdrawn, with prejudice to HC2s right to file another proof of claim in this bankruptcy case."

14

41.     On November 24, 2021, the plaintiff filed a motion to voluntarily dismiss the

bankruptcy case.  Mazer-Marino ECF No. 121.

42.     On December 6, 2021, despite withdrawing from the case with prejudice, the

defendants continued to have HC2 file the "Objection and Joinder Filed by Douglas A Goldstein

on behalf of HC2, Inc. (RE: related document(s)121 Motion to Dismiss Case filed by Debtor

Andrew John Delaney."  Mazer-Marino ECF No. 125.

43.     On December 14, 2021, Goldstein appeared at the hearing and successfully

opposed the plaintiff's motion.  He told Judge Mazer-Marino: "MR. GOLDSTEIN: Thank you,

Your Honor.  This is Douglas Goldstein.  HC2 does not change its position on the motion either.

Thank you."  The plaintiff said to the court: "So my -- in addition to which, Mr. Herbst repeated

the false statement from hired counsel (sic) for HC2 that I had appealed to the Second Circuit a

judgment for extorting my final -- my former employer which was HC2.  Now that was a flat out

falsehood.  I had appealed the denial of my counterclaims, which were just settled by the Court's

order 23 in September."

44.     On January 26, 2022, the amendments to N.Y. Labor Law § 740 took effect.

These have been ruled to be not retroactive, so that the claims in this action are by definition

post-petition.

45.     Starting in March 2022 to the present, the plaintiff engaged in the protected

activity of complaining to the government about HC2's failing to furnish him with a copy of the

Summary Plan Description in violation of the Employee Retirement Income Security Act of

1974 ("ERISA") and the labor laws and ignored his letters to the company about when he would

receive a payment of $2,000 or other amount to which the Social Security Administration

informed him he was entitled.

46.     On July 21, 2022, in retaliation for the plaintiff's complaints, the defendants had Goldstein appear again, despite HC2's exiting the bankruptcy case with prejudice, to attend and speak at the bankruptcy hearing in order to successfully oppose the plaintiff's voluntary dismissal of the bankruptcy case.

47.     On April 12, 2023, also in retaliation, in a Florida defamation case brought by the plaintiff's former lawyer Christopher T. Beres, Esq. in which Zannikos is one of the defendants, Toyota's law firm Wilmer, Cutler, Pickering, Hale and Dorr LLP ("Wilmer Hale"), which is acting in concert with the defendants pursuant to a three-way joint litigation agreement, continued to accuse the plaintiff of extortion: "The statement asserted in Paragraph 24 of the Complaint - that 'plaintiff's John Doe client . . . 'is appealing a judgment entered against him for extorting his prior employer''- does not reference Plaintiff. (Compl. ¶ 24).  It concerns Delaney, and describes an action Delaney was taking - appealing a judgment. The average person reading this statement would not conclude that it implicated Plaintiff." *Beres v. Toyota Motor Corporation et al*, Case No. 502023CA001936XXXXMB (Fla. 15th Cir. Ct. March 3, 2023) Doc. #25.  Thus, three years after Judge Liman's decision, the defendants' unnamed co-conspirator Toyota law firm Wilmer Hale is still claiming that the plaintiff was appealing a judgment entered against him by Judge Liman for extortion.

48.     On May 3, 2023, in the same case, in further retaliation, the defendants' former law firm Kasowitz, also an unnamed co-conspirator in this case, continued to accuse the plaintiff of extortion: "Plaintiff places much emphasis in his Complaint on the use of the term 'extort' as the core of his falsity assertions with respect to the alleged defamatory statements.  How the term 'extort' is used could easily be a matter of opinion…."  Scott Doc. #48.

FIRST CLAIM FOR RELIEF
(Violations of N.Y. Jud. Law § 487)

16

FILED: NEW YORK COUNTY CLERK 06/14/2024 02:44 PM
NYSCEF DOC. NO.          Case 1:24-cv-05211-LJL   Document 1-2   Filed 07/16/24   Page 18 of 27

INDEX NO. 155158/2024

RECEIVED NYSCEF: 06/14/2024

49.     The plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if fully set forth herein.

50.     N.Y. Jud. Law § 487 provides, in pertinent part, as follows: "An attorney or counselor who…. [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party … [i]s guilty of a misdemeanor, and in addition to punishment prescribed thereby by the penal law, he forfeits to the injured party treble damages, to be recovered in a civil action."

51.     As set forth above, the defendants engaged in an intentional pattern of collusion, wrongdoing, and deceit with the intent to deceive both the plaintiff and multiple New York state and federal courts, including the New York County Supreme Court, the United States Bankruptcy Court for the Eastern District of New York, the United States District Court for the Southern District of New York, and the United States Court of Appeals for the Second Circuit.

52.     This claim is against Zannikos and Nacchio and their employers for their egregious, recurring, concerted, and systematic fraud and deceit and collusion aimed at misleading Messer, Lamonica, and Herbst[14] and the New York federal and state courts.

53.     Zannikos and Nacchio repeatedly lied, misquoted the law, authority, and judgments, and committed perjury in the courts.

54.     Specifically, from 2021-2024, Zannikos and Nacchio ignored Judge Liman's clear order read out in open court on May 27, 2020 that the there was no extortion, lied about the contents of the plaintiff's April 7, 2020 demand letter to Akio Toyoda, chairman of Toyota Motor Corporation, filed  a false and fraudulent proof of claim in the plaintiff's chapter 7 case,

---

[14] Messer, Lamonica, and Herbst have never denied Delaney's claim that the defendants' statements and information to them were lies.

lied to the plaintiff's chapter 7 trustee and the trustee's lawyers that Judge Liman had issued a judgment against the plaintiff for extortion, and instructed Goldstein to continue to appear at hearings in the plaintiff's bankruptcy case even after HC2 had been ordered to withdraw from the case with prejudice on August 1, 2021.

55.     There is no civil extortion under New York law.  *Extortion is a crime in New York*.  Thus, Zannikos and Nacchio also lied about the laws of New York State to multiple courts and to the trustee, a representative of the DOJ.  Also, to accuse a lawyer of extortion would cause him irreparable damage, as Zannikos and Nacchio well knew when they did so repeatedly.

56.     The attorney defendants conspired with each other and with Toyota, HC2, and several non-parties in the commission of those frauds.  In the process, they violated not only common law anti-fraud prohibitions but also Judiciary Law § 487 (which provides statutory damages to redress fraud or collusion by attorneys) and knowingly and fraudulently presented a false claim for proof against the estate of a debtor in violation of 18 U.S.C. § 152(4).

57.     As a result of these violations of Judiciary Law §487, the plaintiff has been damaged in his business and property.

58.     Zannikos and Nacchio engaged in this conduct and made these statements in their capacities as attorneys for HC2 and as the agents of Toyota.   Toyota and HC2 are liable for Zannikos' and Nacchio's violations of Judiciary Law §487 under the law of agency, and the doctrine of respondeat superior.

59.     By reason of the foregoing defendants violated Judiciary Law § 487.

60.     The plaintiff is entitled to an award of treble damages of the counsel fees he incurred.

SECOND CLAIM FOR RELIEF
(Civil Conspiracy to Violate N.Y. Jud. Law § 487)

61.      The plaintiff realleges and incorporates herein by reference each and every
foregoing paragraph of this complaint as if fully set forth herein.

62.      As set forth herein, the defendants conspired with each other and with other non-
parties to violate Judiciary Law §487 by engaging in an intentional pattern of collusion, perjury,
and wrongdoing with the intent to deceive Judge Liman, Judge Mazer-Marino, Judge Alexander
M. Tisch, Judge Richard G. Latin, Judge Reid P. Scott II (Florida), the New York Appellate
Division First Judicial Department, the New York Court of Appeals, and the Judges of the
United States Court of Appeals for the Second Circuit..

63.      As a result of the defendants' conspiracy to violate Judiciary Law § 487, the
plaintiff has been damaged in his business and property.

64.      Toyota and HC2 are liable for Zannikos' and Nacchio's roles in this conspiracy
under the law of agency, and the doctrine of respondeat superior.

<u>THIRD CLAIM FOR RELIEF</u>
(Negligent Infliction of Emotional Distress)

65.      The plaintiff realleges and incorporates herein by reference each and every
foregoing paragraph of this complaint as if fully set forth herein.

66.      Under the New York Bar Civility Standards, Zannikos and Nacchio owed the
plaintiff a duty of care "to not mislead" (IX) and also had ethical duties to the plaintiff as a self-
represented party pursuant to DR 7-104(A)(2).  *See also* DR 1-102(A)(4) (forbidding "conduct
involving dishonesty, fraud, deceit, or misrepresentation"); DR 7-102(A)(5) (forbidding a lawyer
from "[k]nowingly mak[ing] a false statement of law or fact" in representing a client).

67.      The defendants repeatedly lied to the courts and falsely accused the plaintiff of
extortion, even after a federal judge determined otherwise, and fraudulently interfered in his

19

bankruptcy case, filed a false and fraudulent proof of claim, and prevented the plaintiff from voluntarily dismissing his bankruptcy case even after they had withdrawn from the case with prejudice.

68.     Zannikos and Nacchio flagrantly breached their duty to the plaintiff especially as a self-represented party.

69.     The defendants' breach of their professional duties was at least negligent and was the direct cause of the plaintiff's injuries.

70.     The defendants' conduct caused the plaintiff severe emotional distress and mental trauma.

71.     From 2021-2024, the plaintiff has suffered severe emotional distress and disability.

72.     As a direct and proximate result of the defendants' conduct, the plaintiff suffered humiliation, severe emotional distress, and mental and physical pain and anguish, amounting to damages to be proved at trial.

73.     The plaintiff is entitled to an award of damages including counseling, lost wages, loss of enjoyment of life activities, embarrassment, and loss of reputation.

74.     Toyota and HC2 are liable to the plaintiff under the doctrine of respondeat superior.

FOURTH CLAIM FOR RELIEF
(Breach of Contract and Stipulation)

75.     The plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if fully set forth herein.

76.     After Judge Mazer-Marino's denial of HC2's emergency motion to quash or limit the plaintiff's depositions of HC2's management, the defendants had Goldstein e-mail the

20

plaintiff to reach an agreement with him not oppose their motion to withdraw their proof of claim in exchange for their exiting the case with prejudice. The plaintiff agreed and issued a letter to the court of consent and no objection to HC2's withdrawal with prejudice.

77.    But after the hearing at which the plaintiff appeared and consented at which Judge Mazer-Marino signed the order, and after falsely representing to the bankruptcy court and to the plaintiff that it had no ulterior motive, on December 6, 2021 and December 14, 2021, Goldstein continued to appear in the case and successfully opposed the plaintiff's voluntary dismissal of the bankruptcy case. The plaintiff had a right to voluntarily dismiss the case pursuant to 11 U.S.C. 707(a).[15]

78.    On July 21, 2022, in specific retaliation for the plaintiff's complaint to the government about HC2's violations of ERISA and other laws, Goldstein appeared at a hearing and opposed the plaintiff's motions.

79.    The defendants violated the settlement agreement between the parties and also the August 1, 2021 order for it to exit the bankruptcy case with prejudice. The defendants also lied repeatedly in HC2's motion in support of the withdrawal of their proof of claim with prejudice.

80.    The defendants were working in concert and are liable to the plaintiff for damages.

## FIFTH CLAIM FOR RELIEF
(Violation of N.Y. Labor Law § 740)

81.    The plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if fully set forth herein.

---

[15] See Shane P. Walsh, *Can a Consumer Debtor Voluntarily Dismiss Own Chapter 7 Case?*, 8 St. John's Bankr. Research Libr. No. 26 (2016) at 1 ("A chapter 7 consumer debtor has the right to voluntarily dismiss his own chapter 7 case, however, that right is not absolute."). https://scholarship.law.stjohns.edu/cgi/viewcontent.cgi?article=1152&context=bankruptcy_research_library

82.     On January 26, 2022, the amended N.Y. Labor Law § 740 took effect and included "former employees" in the definition of employees.[16]

83.     The plaintiff is bringing this claim against the defendants Toyota and HC2 as their *former employee* for their retaliatory actions against him after January 26, 2022.

84.     The plaintiff is a former employee of Toyota and HC2 and is therefore a member of a protected class under N.Y. Labor Law § 740.

85.     The new law clearly includes "former employees" and "natural persons employed as independent contractors." § 740(1)(a)

86.     Starting in March 2022, the plaintiff engaged in the protected activity of complaining to the government about HC2's violation of the law regarding its pension and stock ownership plans by failing to furnish him with a copy of the Summary Plan Description in violation of the Employee Retirement Income Security Act of 1974 ("ERISA") and the labor laws.

87.     The plaintiff is a former employee who reasonably believed that Toyota's and HC2's failure to comply with the laws, rules, and/or regulations of ERISA presented a substantial and specific danger to the public health and safety.

88.     The defendants' violations of the law are a danger to the public health and safety for older Americans[17] such as the plaintiff, who depend on employer plans and need to know their rights and contents.

---

[16] Brian S. Cousin, *Game-Changing Expansion of New York Whistleblower Protection: Will Your Company Be Ready When This Whistle Blows?*, N.Y.L.J., Feb. 4, 2022.
https://www.foxrothschild.com/publications/game-changing-expansion-of-new-york-whistleblower-protection-will-your-company-be-ready-when-this-whistle-blows

[17] The Cambridge Dictionary defines "senior" as "an older person, usually over the age of 60 or 65, esp. one who is no longer employed."

89.     Toyota and HC2 retaliated against the plaintiff by repeatedly refusing to send him a copy of the Summary Plan Description.

90.     On July 21, 2022, Toyota and HC2 further retaliated against the plaintiff for engaging in a protected activity by having Goldstein interfere in and appear at a hearing to successfully oppose the plaintiff's voluntary dismissal of his bankruptcy case.

91.     On April 12, 2023, Toyota and HC2 further retaliated against the plaintiff by having or conspiring with Wilmer Hale to continue to falsely accuse the plaintiff of extortion.

92.     On May 3, 2023, Toyota and HC2 further retaliated against the plaintiff by having or conspiring with Kasowitz to falsely accuse the plaintiff of extortion and to write: "How the term 'extort' is used could easily be a matter of opinion."

93.     The defendants' acts of trying to prevent the plaintiff from voluntarily dismissing his bankruptcy case and their false and repeated accusations against him of "extortion" and having a "judgment against him for extortion" were actions that would adversely impact a former employee's current or future employment, especially as a lawyer. § 740(1)(e).

94.     At the instructions of the government, the plaintiff notified his employers of their violations but they refused to respond or comply.

95.     The plaintiff provided Toyota and HC2 a reasonable opportunity to correct the practice.

96.     Toyota's and HC2's acts referenced above, false accusations against him of extortion and appealing a judgment against him for extortion, and refusal to comply with his rights under ERISA and the labor laws were adverse employment actions and also actions that impacted a former employee's current or future employment.

97.     Since Toyota's and HC2's retaliatory acts commenced on July 21, 2022, the plaintiff has been unemployed and unable to find work.

98.     The defendants are liable to injunctive relief, compensation for lost wages and benefits, money damages in the form of front pay in lieu of reinstatement, civil penalties not to exceed $10,000, and since the employers' actions were willful, malicious, or wanton, uncapped punitive damages, and reasonable costs and attorneys' fees associated with bringing this action.

SIXTH CLAIM FOR RELIEF
(Violations of 42 U.S.C. § 12101 et seq.)

99.     The plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if fully set forth herein.

100.     The defendants' actions against the plaintiff violated the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

101.     The defendants Toyota and HC2 are a person within the meaning of 42 U.S.C. § 12111(7) and 42 U.S.C. § 2000e(a).

102.     The defendants Toyota and HC2 are an employer within the meaning of 42 U.S.C. §§ 12111(5) and 2000e(b), and a covered entity within the meaning of 42 U.S.C. § 12111(2).

103.     The plaintiff is an individual with a disability within the meaning of 42 U.S.C. § 12102.

104.     The defendants also discriminated against the plaintiff as to their benefit plan.

105.     This is and was a violation of federal law.

106.     The defendants further harassed, threatened, and stalked the plaintiff.

107.     The defendants are liable to the plaintiff for declaratory relief, injunctive relief, and compensatory relief.

24

## SEVENTH CLAIM FOR RELIEF
### (Violations of 42 U.S.C. § 2000e et seq.)

108.    The plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if fully set forth herein.

109.    The defendants' actions against the plaintiff violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

110.    The defendants retaliated against the plaintiff by giving negative references and thus prevented another employer from unknowingly discriminating against applicants.

111.    The defendants also retaliated against the plaintiff in connection with their benefits plan.

112.    The defendants discriminated against the plaintiff because he has opposed their unlawful employment practices, or because "he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" concerning their unlawful employment practices.

113.    The defendants are liable to the plaintiff for compensatory and punitive damages and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff demands a judgment against the defendants in an amount to be proven at trial, costs and disbursements, together with any other relief the Court finds to be just and proper.

## JURY DEMAND

The plaintiff demands a trial by jury of all issues triable by jury in this action

Dated: June 4, 2024                    /s/Andrew Delaney
                                       Andrew Delaney
                                       *Plaintiff*

25

Sen.Gil Puyat Avenue
Makati Central Post Office 1057
Brgy. San Antonio
Makati 1250
Republic of the Philippines
63-94-2677-8826
srview1@gmail.com